Brinkerhoff, J.
This action is brought to restrain, by injunction, the defendants from the collection of an assessment, to the amount of $658.60, laid by the commissioners of Wood county upon the south half of the northwest quarter of section 28, and the east half of section 32, township 4 north, range 9 east, in all 400 acres of land, to defray the expense of excavating ditch No. 9, in that county.
The questions involved are presented by demurrer to the petition, which contains a copy of the record of the proceedings for the location and excavation of the ditch, kept by the auditor in accordance with the provisions of the statute; and also an averment, by way of amendment, filed by consent in this court, that the plaintiffs had no actual knowledge of the proceedings, or of the making of the ditch, until they were called upon to pay the assessment.
The case having been brought in and passed upon by the court of common pleas of Wood county, it was taken, by ajjpeal, to the district court of that county, and was, by that court, reserved for decision in this court.
It is contended, in behalf of the plaintiffs, that the commissioners had no jurisdiction over the subject-matter of these proceedings, and the orders for the location and construction of the ditch were unauthorized and void, because—
1. No sufficient survey of the ditch was made and returned to the county auditor before the commissioners took action in the matter; and,
2. No sufficient notice of the pendency and prayer of the petition was given to the owners of lands affected by the proceeding.
The proceedings were commenced on'the 10th day of May, 1859, while the act to provide for “locating, establishing, and constructing ditches, drains, and water-courses,” passed March 24,1859, was in force.
This act provides, “ that before the county commissioners shall take any steps toward locating or establishing any *diteh, etc., *5 there shall be filed with the county auditor a petition, from one or more persons owning lands adjacent to the proposed ditch, etc., setting forth the necessity of the same, with a description of its proposed starting-point, route, and terminus; and shall at the same time file a bond, with good and sufficient sureties, to the acceptance of the county auditor, conditioned to pay all expenses incurred, in case the commissioners shall refuse to grant the prayer of the petition ; and it shall be the duty of the county auditor, immediately thereafter, to place a correct copy of said petition in the hands of the county surveyor, or a competent engineer, who shall thereupon, taking with him the necessary assistance, proceed to make an accurate survey of the route of such proposed ditch, etc., and, on the completion thereof, shall return a plat, or plat and profile, of the same to the county auditor; and shall also set forth in his return a description of the proposed route, its availability and necessity, with a description of each separate tract of land through which the same is proposed to be located, how it will be affected thereby, and its situation and level, as compared with the adjoining lands, together with such other facts as he may deem material. It shall be the duty of the county auditor, immediately on said report being filed, to cause notice in writing to be given to the owner, or one of the owners, of each tract of land along the route of such proposed ditch, etc., of the pendency and prayer of said petition, and of the time of the session of the county commissioners, at which the same will be heard, which notice shall be served at least ten days prior to said session, and an affidavit of said service filed with the county auditor; and in case any such owner is not a resident of the county, or should any party, or parties, in interest die during the pendency of said proceeding, such death shall not work an abatement of such proceeding; but the county commissioners, on being notified thereof, shall make such order as they may deem proper, for giving notice to the person or persons succeeding to the rights of such deceased party or parties; and notice of the pendency and prayer of said petition, and the time of hearing the same, shall be given to such owner or persons, by publication for *two consecutive [6 weeks in some newspaper published, or of general circulation, in said county.”
By section 4 (p. 524) it is provided, “ that said county commissioners, at the session set for the hearing of said petition, shall, if they find the requirements of section 2 have been complied with, *6 proceed to hear and determine the petition; and, if they deem it necessary, shall view the premises, and if they shall find such ditch, etc., to be necessary, and that the same is demanded by, or will be conducive to, the public health, convenience, or welfare, and no application shall have been made for compensation, as provided in section 3, shall proceed to locate and establish said ditch, etc., on the route specified in the plat and return of said county surveyor or engineer.” 4 Curw. Stat. 3206.
The record of the commissioners shows that, on May 10, 1859, a petition, such as is required by the statute, was filed with the county auditor, asking for the location, etc., of a ditch, commencing at or near the southern terminus of the section line, between sections 32 and 33, town three, range nine, and running north, as nearly on said line as practicable,, through town four, and into town five, to a branch of Beaver creek. On May 12,1859, a copy of this petition was placed in the hands of N. W. Minton, engineer, but he having failed to make return of a survey, another copy of the petition was, on Juno 9,1860, placed in the hands of David Donaldson, engineer, who, on August 16, 1860, made return of a survey. To this return is attached a certificate, of which the following is a copy :
“ I certify that the foregoing and accompanying plat aro a true survey of ditch No. 9, commencing about 40 rods north of the southeast corner of section 32, town four, range 9; thence north on the section line to a branch of Beaver creek; thence northwesterly down said branch, terminating on the west line of the southeast quarter of section 32, town 5, range 9.
“ David Donaldson, Engineer.
“ August 6, 1860.”
The plat itself shows a ditch located on the section line, commencing near the south line of town four, and running *north, as stated in the certificate of the engineer. There is nothing to show any location of a ditch in town three.
The plat, as returned by the engineer, shows one tier of sections on each side of the ditch, divided into quarter sections. The quarter sections adjoining the ditch, are divided by red lines into half-quarter sections, and, in some instances, into smaller subdivisions. In each subdivision of the quarter sections is found figures in red ink, thus, 1.00, .50, .25, and on part of the lines, other figures in black ink. On the margin is the following ex- *7 planaticm: “ The red numerals denote the ratios of benefit 100 unity. Those in black ink indicate the deviation and depressions of surface.” Then follows a statement showing the cuttings at each station, and the grade between the stations. And this is the full extent of the showing of the report of the engineer.
In looking into the proceedings by and before the county commissioners, it seems to us that they are, in several particulars, fatally defective and erroneous.
1. The petition addressed to the county commissioners for the establishment and excavation of the ditch proposed, misdescribed the locality of the ditch surveyed by the engineer, and ordered, established, and actually excavated under the authority of the county commissioners. If this mistake in the description of the locality of the proposed ditch had been confined to the petition addressed to the county commissioners, it may be, perhaps, that it would not have materially affected the validity of the subsequent proceedings of the engineer and commissioners; because, I do not see how the mistake could have affected the just rights of the plaintiffs in this case. But this mistaken description was not confined to the petition for the ditch. From the record of the proceedings of the county commissioners, it appears that the same mistaken description of the locality of the proposed ditch was carried into the published notice to the non-resident owners of lands through which the ditch was proposed to be excavated. The plaintiffs were non-resident owners of lands through, or adjacent to which the ditch, as described in the petition for it, and in the published notice to them, was to run. To this they may have had no good *ground of .objection. And yet non constat but that they have had abundant ground of objection to the establishment and excavation of the ditch where it was actually surveyed, established, and excavated.
2. It seems to us that the return of the engineer is quite too meager to answer the requirements of the statute. It contains nothing in respect to the “availability and necessity” of the proposed ditch, and nothing as to how adjoining lands “will be affected thereby.”
3. The statute requires that the commissioners, before establishing a ditch, shall find the same to be'“ necessary, and that the same is demanded by, or will be conducive to, the public health, *8 convenience, or welfare.” No such, finding appears in the record of their proceedings.
These defects, we think, are fatal to the proceedings of the commissioners, as they now stand. And it is furthermore claimed in behalf of the plaintiffs, that the published notice to non-resident owners of lands adjacent to the proposed ditch, of the pendency of the proceedings before the commissioners, is also defective, in this — that the notice was not addressed to them by their individual names, but only “ to non-resident owners of the following lands in Wood county, Ohio, to witand then describing the lands. We are of opinion, however, that the notice given would have been sufficient if the proposed location of the ditch had been correctly described. To ascertain the names of non-resident owners would generally be difficult, and sometimes impossible; and we think there is nothing unreasonable in requiring non-resident land-owners to maintain some kind of an agency in the vicinity of their lands, through which they may be informed of public proceedings affecting them.
Finding then, as we do, that the proceedings by and before the commissioners are, as they now stand, fatally defective, does it follow that the plaintiffs are entitled to an injunction restraining the collection of the assessment levied to pay for the excavation of the ditch? We think not. The act of March 24, 1864, “supplementary to the act entitled ‘ an act to provide for the locating, establishing, and constructing ^ditches, drains, and watercourses,’ ” etc., provides (61 Ohio L. 57) :
“ Seo. 1. That the collection of the taxes levied, or ordered to be levied, to pay for the location and construction of any ditch, drain, or water-course, laid out and constructed under and by authority of the act to which this is supplementary, or the act entitled ‘ an act to provide for locating, establishing, and constructing ditches, drains, and water-courses,’ passed March 24, a. d. 1859, shall not be perpetually enjoined or declared absolutely void in consequence of any error committed by the engineer or surveyor, or by the county auditor, or by the county commissioners, in the location and establishment thereof, nor by reason of any error or infoi’mality appearing in the record of the proceedings by which any ditch, drain, or water-course shall have been located and established. But the court in which any proceeding is now pending, or which may hereafter be brought to reverse, or to declare void the proceedings by *9 which any ditch, drain, or water-course has been located or established, or to enjoin the tax levied, or ordered to be levied, to pay for the labor and fees aforesaid, shall, if there be manifest error in said proceedings, set the same aside and allow the plaintiff in the action to come in and show wherein he has been injured thereby. The court shall, on application of either party, appoint such person or persons to examine the premises, or to survey the same, or both, as may be deemed necessary; and the court shall, on final hearing, make such order in the premises as shall be just and equitable, and may order suoh tax to remain on the duplicate for collection, or order the same to be levied, or may perpetually enjoin the same, or any part thereof; or if the same shall have been paid under protest, shall order the whole, or such part thereof as may be just and equitable, to be refunded, the costs of said proceedings to be apportioned among the parties, or be paid out of the county treasury, as justice may require.
“ Sec. 2. This act shall be in force from and after its passage.”
It is urged, however, in behalf of the plaintiffs, that the provisions of this statute do not apply to this ease:
*1. Because they say errors and defects manifest in the record of the proceedings of and before the county commissioners, are such as go to the jurisdiction of the commissioners, and are not mere “ errors and irregularities ” in the legal sense of those terms. But looking to the mischiefs which that statute was evidently intended to obviate, and to the nature of the remedies for which it provides, we are of opinion that the legislature did not intend to employ the terms “ errors and irregularities ” in a sense so technical and restricted. The remedial provisions of the statute are, in fact, in the nature of proceedings de novo, in which the party on whose lands an assessment has been laid, is permitted to make every claim and every showing which he might have made if the proceedings by and before the commissioners had been in all things regular, and he had been personally notified from the beginning.
2. It is further objected that the act of March 24, 1864, above quoted, was passed during the pendency of the proceedings in this case; and it is claimed that this statute is in derogation of the 28th section of article 2 of the constitution, which prohibits retroactive legislation. Whether the statute would be in contravention of that provision of the constitution if the the latter were not qualified by a further provision of the constitution, it is not necessary for us to *10 decide; for we think the statute is expressly authorized by the provisions of the same section of the constitution which prohibits the passing of retroactive laws, in. these words: “ But [the general assembly] may, by general laws, authorize courts to carry into effect, upon such terms as shall be just and equitable, the manifest intention of . . . officers, by curing omissions, defects, and errors in . . . proceedings, arising out of their want of conformity with the laws of this state.”
An order will be entered setting aside the proceedings and orders of the county commissioners in respect to the assessment on plaintiff’s land; and this case will be remanded to the district court, with leave to the plaintiffs to show wherein they have been injured, and for further proceedings under the statute in such case made and provided.
Scott, C. J., and Day, White, and Welch, JJ., concurred.